IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM L. WETTY,**  *Plaintiff,*  v.  **AXA EQUITABLE LIFE INSURANCE COMPANY,**  *Defendant.* | Case No. 2:18-cv-04756-JDW |

**MEMORANDUM**

An insurer agrees to "send" a notice. The insurer causes a vendor to put the notice in the mail, but the policyholder never gets it. Has the insurer satisfied the contract? It has, because "send" means "send," it does not mean "receive." The Court will therefore grant AXA Equitable Life Insurance Company's summary judgment motion.

**I.    BACKGROUND**

**A.    The Policy**

AXA issued, and Mr. Wetty owned, a Flexible Premium Variable Life Insurance Policy. The Policy gave the owner discretion to choose the amount and frequency of payments rather than setting a schedule of fixed payments. The premiums went into an account (the "Policy Account"), from which AXA deducted monthly insurance costs and other charges (the "Monthly Deduction"). The Policy had a Net Cash Surrender Value, which equaled the value of the funds available in the Policy Account less any applicable surrender charge, policy loan, or accrued loan interest. The Policy's Net Cash Surrender Value had to be sufficient to cover the Monthly Deduction on the first day of the policy month or the Policy was in default.

Once the Policy was in default, AXA "will **send** a written notice to you [*i.e.*, the policyholder] and any assignee on our records at last known addressees stating that a grace period of 61 days has begun, starting with the beginning of that policy month." (ECF No. 19-3 at 8 (emphasis added).) The notice had to state the payment needed to cure the default. If the policyholder did not make the required payment before the end of the grace period, the Policy terminates. The Policy contains an integration clause, which states that "[t]his policy, and the attached copy of the initial application and all subsequent applications to change the policy, and all additional Policy Information sections added to this policy, make up the entire contract." (ECF No. 19-3 at 19.)

AXA also provided a Prospectus for the Policy, which provided:

If the Net Cash Surrender Value at the beginning of any policy month is less than the deductions for that month, a 61-day grace period will begin on the day we send notice that the grace period is starting. We will notify you, and any assignees on our records, in writing that the grace period has begun and indicate the amount of premium payment that will cover estimated monthly deductions for three months.

(ECF No. 20-4 at 23.)

**B.     The Policy Lapse**

On March 24, 2018, the Net Cash Surrender Value of the Policy fell below the Monthly Deduction. As a result, on March 26, 2018, AXA's automated policy monitoring system generated a lapse notice, based on Mr. Wetty's address of record in AXA's files (the "Lapse Notice"). The Lapse Notice stated that the Policy was in default and that Mr. Wetty had a 61-day grace period as of the first day of the policy month to make a premium payment of $6,939.00. If Mr. Wetty did not make the necessary payment before May 26, 2018, the Policy would terminate. On March 27, 2018, AXA transmitted the Lapse Notice via an electronic file to Broadridge Financial Solutions, a third-party vendor that printed it and placed it an envelope as outgoing mail. That same day,

Broadridge transferred the Lapse Notice to Pitney Bowes for mailing. On March 29, 2018, Pitney Bowes mailed the Lapse Notice to Mr. Wetty.

Mr. Wetty did not make the required premium payment by the end of the grace period on May 26, 2018. So the Policy terminated. Then, AXA used the same process to send Mr. Wetty a notice that the Policy had terminated but could be reinstated subject to certain conditions, including the submission of a reinstatement application (the "Termination Notice"). In response to the Termination Notice, Mr. Wetty sent a payment of $6,939.00 to AXA Equitable on June 4, 2018, with a request that AXA reinstate his Policy. Mr. Wetty did not provide the required reinstatement application. AXA returned the payment to Mr. Wetty and informed him that his Policy had already terminated. Mr. Wetty claims that he never received the Lapse Notice; however, he does not dispute that AXA mailed it to the correct address.

### C. Procedural History

On November 2, 2018, Mr. Wetty brought this action against AXA for breach of contract and violation of Pennsylvania's bad faith statute. He alleges that AXA violated the Policy because it did not provide him actual notice or a grace period before terminating the Policy. On November 15, 2019, AXA Equitable filed a motion for summary judgment, which is now ripe.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). The filing of cross–motions does not change this analysis. *See Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001). It "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* at 560 (citation omitted).

## III. ANALYSIS

### A. Breach Of Contract

A party asserting a breach of contract claim must prove three elements: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). Where an insurance policy includes a termination provision, then the contract determines "extent of the right [to terminate] and the conditions upon which it may be exercised." *Hanna v. Reliance Ins. Co.*, 166 A.2d 877, 879 (Pa. 1961). Pennsylvania has adopted "the general rule that parties may provide by contract . . . that mailing is sufficient proof of notice and it is not necessary to prove receipt of it." *Mackiw v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co.*, 193 A.2d 745, 747 (Pa. 1963).

The Policy requires AXA to "send" written notice to "you," meaning Mr. Wetty, if the Net Cash Surrender Value is less than the Monthly Deduction in any particular month. (ECF No. 19-3 at 8.) The Parties do not dispute the process that AXA used and that led Pitney Bowes to mail a

notice addressed to Mr. Wetty. However, they disagree over whether that process satisfied the Policy. It did.

The Policy does not define the word "send." Therefore, under Pennsylvania law, the Court gives the word its natural, plain, and ordinary meaning. *See Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274-75 (Pa. Super. Ct. 2002). The Policy issued in 1987. At the time, the word "send" meant to "cause to go or be carried; dispatch, convey, or transmit," including a letter. *See Webster's New World Dictionary of American English* (3d College Ed. 1988). It did not include a requirement of delivery, then or now. AXA's transmission of the Lapse Notice for mailing falls squarely within this definition and therefore satisfies the contract.

That outcome is consistent with decisions of Pennsylvania courts. In *Hanna,* for example, the Pennsylvania Supreme Court analyzed a provision that allowed the insurer to cancel the policy by "mailing" written notice. *Hanna*, 166 A.2d at 878. The Court acknowledged that "[t]he method provided for cancellation in the policy issued by defendant to petitioner was most favorable to defendant. It did not even require that the insured receive actual notice of the unilateral action taken by the insurer to terminate the policy." *Id*. at 880. Even so, the Court saw "no reason why the contract should not be enforced according to its terms" *Id.* (quotation omitted); *see also Szymanski v. Dotey*, 52 A.3d 289, 293 (Pa. Super. Ct. 2012) ("Where the use of the mails as a means of acceptance is authorized or implied from the surrounding circumstances, the acceptance is complete by posting the letter in normal mail channels, without more.") (quotation omitted). Mr. Wetty's arguments to the contrary all would have the Court alter the meaning of the contract and run counter to Pennsylvania law.

*First*, Mr. Wetty argues that because the Policy required AXA to send notice "to you," it required delivery. However, that argument is not true to the language of the Policy. The Policy

required AXA to send the Lapse Notice to "you" and "any assignee" at "last known addresses." (ECF No. 19-3 at 8.) The sentence at issue includes a verb, "send," and prepositional phrases that modify the verb: a phrase beginning with "to" and a phrase beginning with "at." Those phrases modify the word "send" but do not alter it. Read logically, the prepositional phrases limit the verb "send" by defining to whom AXA had to transmit the Lapse Notice and where it had to address it. But to read the prepositional phrases as imposing a delivery requirement would alter the language of the Policy, not stay true to it. If Mr. Wetty, or any policyholder, wants to bargain for a delivery requirement, he is free to do so, but the Court should not rewrite the contract after the fact. *See Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 F. App'x 944, 947 (3d Cir. 2004) ("Insurance purchasers are obligated to read their policies, and are bound by the clear terms in those policies.").

Mr. Wetty also contends that the Prospectus, in which AXA states that it will "notify you" of a lapse, requires actual notice for termination. (ECF No. 20-4 at 8.) Even if that were a correct reading of the Prospectus, the Policy does not include that language. The Policy does have an integration clause, however. "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.  Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436–37 (Pa. 2004). Mr. Wetty cannot rely on the Prospectus to change the language in the Policy or the obligations that flow from it.

Finally, Mr. Wetty asks the Court to consider equitable principles in reviewing the events that transpired between the Parties. He offers no cases to support his assertion that the Court can use equitable principles to disregard the parties' contract. Indeed, under Pennsylvania law, courts do "not use equitable considerations to deprive a party of his rights at law." *Bawer v. P.A. CUttri Co. of Bradford, Inc.*, 253 A.2d 252, 255 (Pa. 1969). Parties to a contract must live with their bargain. It is not for courts to revise the bargain later based on concerns of equity.

### B.     Bad Faith

Pennsylvania's law creates a cause of action against an insurance company "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa.C.S. § 8371. Pennsylvania courts have defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a policy." *Rancosky v. Washington National Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (quotation omitted). A threshold question in a bad faith action is whether the employer had a reasonable basis for denying benefits under the policy. *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006). As discussed above, AXA had a reasonable basis for denying benefits. Thus, Mr. Wetty's bad faith claim fails.

## IV.    CONCLUSION

AXA complied with its obligations under the Policy. It did not have to do anything more. It therefore cannot be liable for breaching the Policy. The Court will grant AXA's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated:  May 20, 2020